IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

AARON DOYLE,

    Plaintiff,

vs.

WILLIAM GONZALES, et al.,

    Defendants.
_____/

NO. MISC. S-11-0066 GEB GGH

<u>MEMORANDUM</u>

Previously pending on this court's law and motion calendar for August 25, 2011, was plaintiff's motion to quash subpoena duces tecum and/or protective order, filed July 20, 2011, and defendants' motion to compel compliance with subpoena duces tecum, filed August 8, 2011. Also before the court is defendants' motion to strike, filed August 23, 2011. Joseph Rose and Garth Dano[1] appeared for plaintiff. Jerry Moberg appeared for defendants. After reviewing the briefing in support of and in opposition to the motions and hearing oral argument, the court

////

////

---

[1] At hearing, plaintiff moved for pro hac vice admission of attorney Garth Dano so that he could be heard at oral argument. The court permitted the admission provisionally, so long as Mr. Dano fulfilled all proper requirements for admission in this district. <u>See</u> E. D. Local Rule 180(b)(2).

now issues the following explanatory memorandum.[2]

BACKGROUND

Plaintiff was a peace officer in the City of Quincy ("Quincy"), in the Eastern District of Washington, where the underlying case is venued. He moves to quash a subpoena[3] issued by Quincy seeking his confidential employment records from his previous employment as a deputy sheriff from 2000 to 2006 with the County of Sierra, California. Plaintiff indicates that he was initially terminated from that employment, but on appeal he was reinstated and received a one year suspension and one year probation. He claims that Quincy hired him knowing about this information contained in the confidential records. Plaintiff's current action in the Eastern District of Washington concerns his allegations of misconduct and cover up by the Quincy Police Department. Doyle v. Gonzales, No. 10 CV 0030 EFS (E. D. Wash.).

There is an involved procedural history to the documents now sought by the defendants police officers and Quincy. Beginning with the administrative disciplinary proceedings against Doyle by the Sierra County Sheriff's Department, Doyle's employment records were lodged conditionally under seal. Once that case was settled in February, 2008, the settlement agreement provided that after five years from the date the administrative investigation was initiated, the Sheriff would mail to Doyle all originals and copies of his records. The Sheriff complied; however, in March, 2011, the Sierra County Superior Court, on its own motion and in connection with a preliminary injunction, returned these confidential records to the Sheriff.

Plaintiff filed his federal court action in Washington in 2010 for alleged civil rights violations by the Quincy Police Department. In connection with that action, Quincy hired an attorney, Ingrid Larson, to inspect sealed files in the Sierra County case. On October 1, 2010,

---

[2] A summary order was issued on the day of the hearing so that defense counsel could pick up the documents after the hearing while he was here in California. Plaintiff's motion to quash was denied and defendant's motion to acquire the documents was granted.

[3] The subpoena has been issued to the Sierra County Clerk-Recorder.

1 the court clerk there erroneously scanned and transmitted approximately 220 pages of documents, 2 most of which were the confidential records, by email to Quincy City Attorney Allan Galbraith. 3 Mr. Galbraith then gave copies of these records to current counsel for defendants, Jerry Moberg, 4 to use in that action.

5         On January 13, 2011, plaintiff filed a petition for writ of mandamus in Sierra 6 County Superior Court to enforce the prior sealing order as to the confidential records from the 7 two 2007 cases, and to compel the parties in possession of these documents to return them to the 8 court, and enjoin their use.  On March 14, 2011, the Superior Court of Sierra County granted a 9 preliminary injunction directing Quincy, Galbraith and Larson to return all originals and copies 10 of the documents within 20 days.  Although Quincy and the Quincy Police Chief filed 11 declarations of compliance and returned the confidential records, Quincy's attorney, Moberg, did 12 not file a declaration of compliance and continued to possess the documents.  At the same time, 13 Moberg continued to try to obtain via court process these same confidential documents obtained 14 from Galbraith.

15         On April 26, 2011, Moberg served an amended subpoena duces tecum on the 16 County Clerk, demanding production of the records that had been returned by the Sierra County 17 Court Clerk pursuant to a minute order dated March 25, 2011.  Sierra County Counsel responded 18 to this subpoena, arguing that these documents appeared to be protected by the March 15, 2011 19 preliminary injunction.  The motion to quash and motion to compel surrounding this subpoena 20 were heard in the Eastern District of Washington case.  Judge Shea denied the motion to compel 21 and quashed the subpoena on procedural grounds, finding that the court there had no authority 22 over a non-party not located in that district.  The subpoena was re-issued in this district and is the 23 subject of the current motions.

24         Meanwhile, on June 14, 2011, plaintiff filed a motion for order of contempt 25 against Quincy in Sierra County Superior Court, for Quincy's failure to retrieve and return copies 26 of the confidential records it had given to Moberg, and in regard to the April 26, 2011 subpoena

issued to the County Clerk, seeking the confidential records.  The superior court judge issued an order to show cause why Quincy should not be held in contempt, and has set a hearing for September 8, 2011.  In the order to show cause, Judge Garbolino held that his preliminary injunction did not extend to documents obtained through third parties and that the Sierra County Superior Court lacked jurisdiction to ban the federal subpoena.

DISCUSSION

Plaintiff argues that his former personnel records are protected peace officer personnel records under Cal. Penal Code § 832.7 and under the official information doctrine.

I. Applicability of Federal Law to Claims of Privilege

Federal law applies to privilege based discovery disputes involving federal claims, even if allied with by pendent state law claims.  See, e.g., Pagano v. Oroville Hospital, 145 F.R.D. 683, 687 (E.D.Cal. 1993); Martinez v. City of Stockton, 132 F.R.D. 677, 681-83 (E.D.Cal. 1990).  Privileges are narrowly construed, because they impede the full and fair discovery of the truth.  Eureka Financial Corp. v. Hartford Acc. and Indemnity Co., 136 F.R.D. 179, 183 (E.D. Cal. 1991).  Further, the party asserting a privilege has the burden to establish that it applies.  See, e.g., United States v. O'Neill, 619 F.2d 222, 227 (3rd Cir. 1980).

The Supreme Court has reemphasized that privileges are not favored:

> The common-law principles underlying the recognition of testimonial privileges can be stated simply.  "'For more than three centuries it has now been recognized as a fundamental maxim that the public . . . has a right to every man's evidence.  When we come to examine the various claims of exemption, we start with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule.'"

Jaffee v. Redmond, 518 U.S. 1, 9, 116 S. Ct. 1923, 1927 (1996) (citing United States v. Bryan, 339 U.S. 323, 331, 70 S. Ct. 724, 730, 94 L. Ed. 884 (1950) (quoting 8 J. Wigmore, Evidence § 2192, p. 64 (3d ed.1940)); see also Maricopa Audubon Soc. v. U.S.F.S., 108 F.3d 1082, 1085-86 (9th Cir. 1997).

In cases presenting 42 U.S.C. § 1983 civil rights claims concurrently with state law claims, courts disagree about the extent to which state privilege law remains applicable in discovery disputes. The Supreme Court explicitly noted in <u>Jaffee</u> that the issue is unsettled. <u>Jaffe</u>, 518 U.S. at 15 n.15, 116 S. Ct. at 1931 n.15 (noting disagreement concerning the proper rule in cases in which both federal and state claims are asserted in federal court.) This court has found that in mixed federal and state claim cases, although federal law is ultimately binding, state privilege law which is consistent with its federal equivalent significantly assists in applying privilege law to discovery disputes. See <u>Pagano</u>; <u>Martinez</u>; <u>Cook v. Yellow Freight</u>, 132 F.R.D. 548 (E.D. Cal. 1990). Other courts, however, disagree. <u>See</u>, e.g., <u>Jackson v. County of Sacramento</u>, 175 F.R.D. 653, 654 (E.D. Cal. 1997) (stating that Pagano/Martinez/Cook have been overruled).[4] The other courts in this Circuit seemingly have overlooked binding precedent. The Ninth Circuit continues to hold that "[i]n determining the federal law of privilege in a federal question case, absent a controlling statute, a federal court may consider state privilege law." <u>Lewis v. United States</u>, 517 F.2d 236, 237 (9th Cir. 1975) (citations omitted).

The undersigned considers state law in mixed federal/state claims. See <u>Pagano</u>. *While federal law is controlling*, <u>id</u>. at 687, *and the law applied is ultimately federal common law*, state law is nevertheless instructive in forming that federal common law, especially in mixed claims where one of the elements of the federal claim is that a *state* actor was acting under color

---

[4] <u>Jackson</u> is, respectfully, simply wrong in its proposition that <u>Jaffe</u> overruled <u>Pagano</u>, <u>Martinez</u>, and <u>Cook</u>. For starters, the cases were not referenced by <u>Jaffe</u>. More importantly, <u>Jaffe</u> itself expressly noted the disagreement on the extent to which federal privilege law was informed by its state law counterpart, and expressly held that it would not rule on the issue. "We note that there is disagreement concerning the proper rule in cases such as this in which both federal and state claims are asserted in federal court and relevant evidence would be privileged under state law but not under federal law....we express no opinion on the matter." <u>Jaffe</u>, 518 U.S. at 15 (n.15), 116 S. Ct. at 1931. <u>Jackson</u> is based on the questionable premise that the Supreme Court's determination not to consider an issue impliedly overrules cases discussing the issue. The cases that have followed <u>Jackson</u>'s erroneous interpretation of <u>Jaffe</u>, seemingly without reference to footnote 15 in <u>Jaffe</u>, are likewise flawed in this respect. See <u>Folb v. Motion Picture Indus. Etc.</u>, 16 F. Supp. 2d 1164 (C.D. Cal. 1998); <u>Humphreys v. Regents of University of Cal.</u>, 2006 WL 335275 (N.D. Cal. 2006).

of *state* law when the federal right was violated – a category which includes every 42 U.S.C. § 1983 action.[5] It has been the policy of the undersigned, "when state privilege law is consistent, or at least compatible, with federal privilege law," to read the two together "in order to accommodate the legitimate expectations of the state's citizens." Id. at 688. Several reasons justify this policy. First, as previously noted, the Ninth Circuit has found that state law may inform the federal privilege question. Second, the Supreme Court explicitly noted in Jaffe that the matter is unsettled.

However, the undersigned need not revisit this and finally decide this question anew here in that the district judge assigned to this case has previously indicated his view that federal law alone is involved. Dagdagan v. City of Vallejo, 263 F.R.D. 632, 638-639 (E.D. Cal. 2009). Moreover, the result would be the same under either law.

II. Governmental Privileges

The federal privilege applicable to the government interest in preserving confidentiality of law enforcement records has various names: (1) the "official information privilege," Sanchez v. City of Santa Ana, 936 F.2d 1027, 1033 (9th Cir. 1991) (employment discrimination case which raised only federal claims); (2) the "law enforcement privilege," In re Department of Investigation of City of New York, 856 F.2d 481, 483-84 (2d Cir. 1988) (applying privilege to protect investigative agency with dual criminal and civil functions); Morrissey v. City of New York, 171 F.R.D. 85, 90 (S.D.N.Y. 1997) (finding, with guidance from state law enforcement privilege, that law enforcement privilege is somewhat narrower than official information privilege); and (3) a type of "executive privilege," Siegfried v. City of Easton, 146 F.R.D. 98, 101 (E.D. Pa. 1992). The federal privileges are based on the following rationale:

> The purpose of this privilege is to prevent disclosure of law enforcement techniques and procedures, to preserve the

---

[5] Those who interpret the trilogy of Pagano, Martinez, and Cook as standing for the proposition that state privilege law is ultimately controlling in mixed claim situations have misread the cases.

confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation.

In re Dept. of Investigation, 856 F.2d at 484.

This federal "qualified" governmental privilege is consistent with California statutes according a qualified privilege to peace officer personnel records. Cal. Penal Code § 832.7.[6] Disclosure requires "good cause" (Cal. Evid. Code §1043),[7] relevance, and unavailability by other means (Cal. Evid. Code §1045). [8]

---

[6] Cal. Penal Code § 832.7 provides in part:

(a)  Peace officer or custodial officer personnel records and records maintained by any state or local agency pursuant to Section 832.5, or information obtained from these records, are confidential and shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code.

[7] Cal. Evidence Code § 1043 provides in part:

(a)     In any case in which discovery or disclosure is sought of peace custodial officer personnel records . . . the party seeking the discovery or disclosure shall file a written motion with the appropriate court or administrative body. . .
(b)     The motion shall include ... (3) Affidavits showing good cause for the discovery or disclosure sought ...

[8] Cal. Evid. Code § 1045 provides:

(a) Nothing in this article shall be construed to affect the right of access to *records of complaints, or investigations of complaints,* or discipline imposed as a result of such investigations, concerning an event or transaction in which the peace officer or custodial officer ... participated, or which he or she perceived, and *pertaining to the manner in which he or she performed his or her duties, provided that information is relevant* to the subject matter involved in the pending litigation.

(b) In determining relevance the court shall examine the information in chambers in conformity with Section 915, and shall exclude from disclosure:

(1) Information consisting of complaints concerning conduct occurring more than five years before the event or transaction that

The California statutes codifying the governmental privilege balance the need for disclosure with the government's legitimate need to acquire and maintain confidential information for sensitive activities.  See County of Los Angeles v. Superior Court, 18 Cal. App. 4th 588, 22 Cal. Rptr. 2d 409 (1993); People v. Superior Court for County of Sacramento, 19 Cal. App. 3d 522, 97 Cal. Rptr. 118 (1971).  As these cases demonstrate, the California Legislature understood quite well the need for some secrecy in government affairs, and was aware that permitting unrestricted disclosure might chill the ability of government officials to obtain candid, confidential information from persons otherwise reluctant to become involved or influenced by interests of self-preservation.  It is critical to note that Cal. Evid. Code § 1045 strikes the state balance in favor of disclosing internal investigations pertaining to the manner in which a peace officer performed his or her duties, *so long as they are relevant* to pending

> is the subject of the litigation in aid of which discovery or disclosure is sought.
>
> (2) In any criminal proceeding the conclusions of any officer investigating a complaint filed pursuant to Section 832.5 of the Penal Code.
>
> (3) Facts sought to be disclosed which are so remote as to make disclosure of little or no practical benefit.
>
> (c) In determining relevance where the issue in litigation concerns the policies or pattern of conduct of the employing agency, the court shall consider whether the information sought may be obtained from other records maintained by the employing agency in the regular course of agency business which would not necessitate the disclosure of individual personnel records.

(emphasis added.)

The undersigned has found the proviso of § 1045 that information will be deemed per se irrelevant if it includes "complaints concerning conduct occurring more than five years before the event or transaction which is the subject of the litigation," too rigid to comport with federal law, in which "remoteness" is a matter generally weighed in determining the relevance of particular information.  "[T]he overall balancing provisions contained within [Fed. R. Civ. P.] 26(b) [dictate that] . . . [t]he court must carefully assess the request for discovery in light of . . . the remoteness of sought discovery to the issues in the case." Martinez, 132 F.R.D. at 682.  That analysis is confirmed.

litigation.[9]

While any ruling here is ultimately considered to be federal common law, relevance is the dispositive factor in directing disclosure of internal affairs investigations whether federal or state law is ultimately applied.

III. Analysis

In citing to previous court orders protecting the documents at issue, plaintiff claims that the documents are entitled to a "near absolute privilege." Defendants argue the subpoenaed documents are relevant to their affirmative defense of after-acquired evidence in that the records will establish whether plaintiff deleted almost 1,000 police files in Sierra County. Defendants claim that plaintiff did not previously make them aware of this information. Plaintiff argues that Quincy was well aware of the subject information before hiring plaintiff and the requested documents therefore do not qualify as after-acquired evidence. Because this defense has not been ruled upon by the district court in Washington,[10] the undersigned will assume that discovery relating to this defense is fair game, pending a district court ruling on the matter.

Both at hearing and in their papers, the parties presented their positions on why the after-acquired evidence defense does or does not apply. These positions confirm that this defense may or may not be permitted, and that a decision is not clear-cut. For example, plaintiff argues that the after-acquired evidence defense requires defendants to show that the evidence was first acquired after plaintiff was terminated by Quincy on February 18, 2011, and that they would have fired plaintiff for it. Plaintiff contends that defendants knew all about the Sierra County allegations for months before they hired him, and they fired him for 24 alleged acts of

---

[9] Internal affairs investigations are "investigations of complaints" covered by Cal. Evid. Code § 1045. See City of Fresno v. Superior Court, 205 Cal. App. 3d 1459, 253 Cal. Rptr. 296 (1988).

[10] At hearing, counsel for defendants represented that Judge Shea specifically found that such a defense was not futile and that he was not making any decisions about this defense at that time.

misconduct, none of which had anything to do with the Sierra County allegations.  Plaintiff attempts to explain his apparently inconsistent statements by the administrative appeals process wherein plaintiff was at first terminated; the termination was reversed on December 29, 2006; and mandamus proceedings were initiated on February 5, 2007 to reverse plaintiff's reinstatement, at which time plaintiff was on administrative leave.  The administrative record was not certified until May 19, 2007, after plaintiff applied for employment with Quincy.  Plaintiff was hired by Quincy on August 1, 2007.

Defendants, on the other hand, contend that plaintiff was fired from his job as a Sierra County Deputy Sheriff because he gave false and misleading testimony during an Internal Affairs investigation and an appeal hearing related to his termination, and because after his termination he deleted nearly 1,000 police department files without any authority from the department.  While suspended from Sierra County, he applied for the job in Quincy without disclosing the truth about these problems in either his job application, his interview with a background investigator, or during his polygraph examination.  It was only after plaintiff had been employed at the Quincy Police Department for a year, that Quincy learned, through this litigation, the truth about his false testimony and deletion of police files.  Defendants claim that if they had been aware of these particular facts, they would not have hired plaintiff.

It is not clear that an after-acquired evidence defense would be futile.  Therefore, the documents must be considered relevant for purposes of this proceeding.  The admissibility of these documents for further substantive proceedings is entirely at the district court's discretion.  Furthermore, because this case concerns a federal question, federal law applies as discussed *supra*.  Plaintiff's cited privileges are therefore not as absolute as he would wish.  Accordingly, the subpoenaed documents shall be produced subject to a protective order signed by the district court in the underlying action.

IV.  Motion to Strike Portions of Dano Declaration

Defendants move to strike portions of the Garth Dano declaration submitted in

10

support of plaintiff's motion to quash subpoena (dkt. no. 23), claiming it contains hearsay, argument and other incompetent evidence. The undersigned has determined that the Dano declaration filed on August 18, 2011 was not necessary to decide these discovery motions and has not considered the declaration. Therefore, defendants' motion to strike will be denied as unnecessary.

CONCLUSION

       For the reasons stated in this memorandum, it was ordered that:

       1. Plaintiffs' motion to quash subpoena and/or for protective order, filed July 20, 2011, (dkt. no. 1), was denied.

       2. Defendants' motion to compel compliance with subpoena duces tecum, filed August 8, 2011, (dkt. no. 18), was granted. To the extent that the documents have not already been produced in accordance with this court's summary order granting the motion, they shall be produced forthwith, subject to the terms set forth in that order of August 25, 2011 (dkt. no. 30).

       3. Defendants' motion to strike portions of the declaration of Garth Dano, filed August 23, 2011, (dkt. no. 27), is denied as unnecessary.

DATED: September 6, 2011

                        /s/ Gregory G. Hollows
                        UNITED STATES MAGISTRATE JUDGE

GGH:076/Doyle0066.mtq.wpd